| | | |
|---|---|---|
| DENISE SELLERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:11-CV-190 |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant BNSF Railway Company's ("BNSF") Motion for Summary Judgment (#27), in which BNSF seeks judgment as a matter of law on Plaintiff Denise Sellers's ("Sellers") claims of sex discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17. Sellers opposes BNSF's motion, asserting that the record contains disputed material facts that make summary judgment inappropriate. Having considered the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that BNSF's motion should be granted.

I.     Background

BNSF initially hired Sellers in 1997 as a trainman. From 1998 until her ultimate termination in 2008, she was employed as a locomotive engineer. During that time, several issues arose concerning her employment. In 1999, Sellers filed a sexual harassment suit against the company, which settled out of court. In 2006, she received several letters relating to her purported violations of various BNSF work rules. The first letter, sent by BNSF on February 6,

2006, assessed a formal reprimand and ten-day record suspension[1] against Sellers for failing to contact her supervisor within 24 hours of missing work for a family emergency and for purportedly violating another unspecified work rule.[2]

Several months later, on June 20, 2006, BNSF sent a second letter formally reprimanding Sellers for violating work attendance guidelines. Specifically, the letter stated that Sellers failed to perform service as a full-time employee between February 2006 and April 2006. Sellers's supervisor, Darren Whitten, sent a third letter to her on August 18, 2006, informing her that she was dismissed from BNSF due to her continued violations of BNSF's attendance guidelines. According to the letter, Sellers missed a call on July 8, 2006, violated the attendance policy between April and June 2006, and violated the attendance policy, pending investigation, between May and July 2006.[3] Sellers did not file a charge with the Equal Employment Opportunity Commission ("EEOC") at that time.

Despite her previous violations, the General Manager of BNSF's Gulf Division, John Klaus ("Klaus"), offered to reinstate Sellers on March 15, 2007, on the basis of "managerial leniency." The parties dispute whether Klaus's offer was simply a matter of managerial grace or based on the request of Sellers's union, the United Transportation Union ("UTU"). At the very least, an informal request by Sellers's union prompted Klaus to offer reinstatement to Sellers. In any event, the letter stated that her reinstatement was "contingent upon Ms. Sellers maintaining a 'full-time'

---

[1] A record suspension is noted on an employee's record but does not result in the employee's suspension from service.

[2] The letter identified the rule as "System General Notice No. 385," but the parties have not provided evidence about what the rule prohibits.

[3] The letter also mentions two disciplinary actions taken against Sellers in 2005, but they are not reflected in her personnel file or official employee transcript.

working relationship with the carrier [BNSF]." The letter further advised that if she failed to do so, for example, by violating BNSF's attendance guidelines, missing a call, "laying off on call," or not reporting to work, she could be permanently dismissed after a formal investigation. It also specified that if she maintained full-time status consecutively for one year without a non-serious or serious incident, her previous discipline would not be considered when assessing future discipline. Further, the letter emphasized that it was Sellers's "final opportunity" to prove that she would "protect her service opportunities" with BNSF. Sellers accepted the offer and was reinstated on March 26, 2007.

According to BNSF, on August 3, 2007, Sellers again violated BNSF's work rules. That day, Sellers and her conductor were operating a train pursuant to a track warrant.[4] The track warrant authorized Sellers to move the train only up to a specific mile marker. Sellers did not stop the train in time, however, so she placed the train in "emergency" mode and stopped it a few feet past the marker. She then removed the train from "emergency" mode, reversed it, and brought it behind the mile marker. She allegedly did not immediately report the incident to anyone at BNSF. According to BNSF, all of these actions—exceeding the track warrant authority, taking the train out of emergency mode and reversing it, and not immediately reporting the incident—violated BNSF rules.

As a result of the aforementioned incident, Utilis Vinson ("Vinson"), the Superintendent of Operations, suspended Sellers from service on August 8, 2007. In explaining his decision, Vinson stated that he considered the severity of the incident, its proximity to Sellers's

_____
[4] Track warrants are systematized permissions used on a railroad line to authorize a train's movement on the line.

reinstatement, and his interpretation of her reinstatement offer, which he viewed as putting Sellers on a form of probation. The reinstatement offer, however, does not expressly reference the term "probation." For her part, Sellers contends that the incident was her first operations rules violation, for which BNSF employees ordinarily receive no more than a 30-day suspension. Her suspension, however, lasted four months, during which time BNSF conducted a formal investigation.

On November 26, 2007, while on suspension for the August 2007 incident, Sellers filed an EEOC charge against BNSF. The charge avers that her August 8, 2007, suspension was the result of sex discrimination and retaliation by BNSF. It also alleges that she was subjected to a hostile work environment. After the investigation into the August 2007 incident was completed, Vinson ended Sellers's suspension. She returned to service on December 8, 2007, subject to a three-year probationary period expressly set out in a letter from BNSF.

On January 1, 2008, Sellers reportedly committed additional violations of BNSF rules. BNSF contends that Sellers again exceeded her track warrant authority and had to put the train into "emergency" mode to stop. Although Sellers contacted the dispatcher to state that she had placed the train into emergency mode and to receive further instructions, she failed immediately to disclose to the dispatcher that she had also exceeded her track warrant authority. Shortly thereafter, the conductor accompanying Sellers on the train notified the dispatcher that the crew had exceeded its track warrant authority. While admitting that she did not advise the dispatcher she had exceeded her track warrant authority in her first communication with him, Sellers disputes the characterization of her conduct as dishonest. She notes that the dispatcher was informed that she had exceeded her track warrant authority by the conductor only minutes after she first reported

that she had to place the train in emergency mode. In her view, the fact that BNSF labeled that delay as a failure to notify demonstrates the abnormal scrutiny to which she was subjected on the job.

After BNSF conducted a formal investigation into the January 1, 2008, incident, Vinson discharged Sellers in February 2008. He reached his decision to terminate her based on the January 2008 incident as well as Sellers's prior disciplinary record. In his deposition, Vinson stated that he was particularly concerned that Sellers had been involved in two similar incidents, both of which involved exceeding her track warrant authority and a failure to report, in a very short period of time. He further claimed that he did not base his decision on Sellers's EEOC charge because he did not know about it. Sellers did not file an additional EEOC charge after her discharge nor did she supplement her November 2007 EEOC charge.

BNSF did not directly replace Sellers after her termination. Instead, her job duties were distributed among other engineers and conductors pursuant to BNSF policies on work assignments. In short, BNSF assigns work by choosing individuals from pools of employees listed on "boards" that cover specific tasks.[5] For example, before her termination, Sellers was last on Board 43, which lists employees available to perform the task of moving a train from Beaumont, Texas, to Somerville, Texas.

Following her termination, the UTU asked BNSF's Labor Relations Department to reinstate her, but BNSF refused. Afterward, the union challenged her dismissal before a Public

---

[5] Assignments are made using both the boards and seniority rosters, which are lists of employees in seniority order. Individuals are selected from the rosters to fill positions on the boards solely on the basis of seniority. In turn, work is assigned to employees listed on the boards on a first-in, first-out basis, meaning that the next job goes to the next person on the board.

Law Board,[6] which also denied the request for reinstatement.  Meanwhile, the EEOC continued

to investigate the allegations in the 2007 charge.  Based on its investigation, the EEOC eventually

concluded that Sellers was "subjected to a hostile environment based on her sex and retaliated

against based on her complaints of discrimination in violation of Title VII . . . ."  It also stated

that the "[e]vidence suggests [Sellers] was discharged for an event which other employees who

committed the same type of infractions were not discharge [sic] for."  The EEOC did not bring

suit on her behalf but issued Sellers a notice of right to sue on January 26, 2011.

On April 25, 2011, Sellers filed this action against BNSF challenging her 2007 suspension

and her 2008 discharge.[7]  As noted, she alleges that both were the result of sex discrimination.

In addition, she contends that both actions were taken in retaliation for her 1999 sexual harassment

suit against BNSF and that the 2008 discharge was in retaliation for the 2007 EEOC charge.

BNSF denies all of her allegations and argues that Sellers failed to exhaust her administrative

remedies in connection with her 2008 discharge.

II.    Analysis

A.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall

be granted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[6] A "Public Law Board" is a "special board of adjustment" described in 45 U.S.C. § 153(x).  *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987).  It is "a creature of federal law which investigates adverse employment actions against railroad employees covered by a collective bargaining agreement.  It is comprised of three members, one representing the union, one representing the railroad, and one member who is independent.  Its decisions are final and binding." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 256 n.3 (5th Cir. 2009).

[7] BNSF originally believed that Sellers was bringing a sex discrimination claim based on her 2006 dismissal.  She clarifies in her sur-reply, however, that this lawsuit is not based on that dismissal.  The court will therefore not consider any claim based on that incident.

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994));

*Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009). Moreover, summary judgment is "generally inappropriate where inferences parties seek to draw deal with questions of motive and intent." *Williams v. Upjohn Co.*, 153 F.R.D. 110, 116 (S.D. Tex. 1994);

*see also Pasco v. Knoblauch*, 223 F. App'x 319, 322 (5th Cir. 2007) ("[S]ummary judgment is rarely proper when an issue of intent is involved."). The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539,

541 (5th Cir. 2003); *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.    Effect of EEOC Findings in the Summary Judgment Context

On summary judgment, the district court is not bound by findings set forth in an EEOC determination letter regarding the plaintiff's claims of discrimination. *Hypolite v. City of Houston*, No. 12-20065, 2012 WL 4858198, at *4 (5th Cir. Oct. 15, 2012) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 725 (5th Cir. 2002)). The court, however, is "required to take an EEOC investigative report into consideration" because the "failure to do so would be 'wasteful and unnecessary.'" *Price*, 283 F.3d at 725 (quoting *Smith v. Universal Servs., Inc.*, 454 F.2d 154,

157 (5th Cir. 1972)).  The EEOC's findings of discrimination are "not dispositive" in later discrimination suits.  *Id.* (addressing racial discrimination).  "Despite an earlier positive finding of discrimination by the EEOC, [the Fifth Circuit has] held in subsequent suits that the plaintiff was not discriminated against by his or her employer."  *Id.*; *see also Odom v. Frank*, 3 F.3d 839, 843 (5th Cir. 1993) (holding that district court's finding that plaintiff was discriminated against was clearly erroneous, despite EEOC's conclusion that plaintiff had been discriminated against), *overruled on other grounds by Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010); *cf. Smith*, 454 F.2d at 157 (stating that subsequent civil litigation is a *de novo* proceeding, "completely separate from the actions of the EEOC").

Here, Sellers has presented the EEOC's letter of determination as well as the investigative file that the EEOC compiled while investigating Sellers's claims.  In the determination letter, the EEOC states that it found that BNSF allowed a hostile work environment to develop at Sellers's workplace and that her discharge was more than likely a "retaliatory event."  The agency did not specifically conclude that Sellers was discriminated against in connection with her 2007 suspension or 2008 discharge, although the letter states that Sellers was "discharged for an event which other employees who committed the same type of infractions were not discharge [sic] for."  Therefore, the EEOC's conclusions are only partially relevant to the claims Sellers presents here, and the court will consider them accordingly.

Furthermore, some documents in the EEOC file consist of unsigned, unsworn statements that are not competent summary judgment evidence.  *See Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332-33 (5th Cir. 2007) (holding that "the underlying material collected during the

EEOC investigation" must be admissible on its own grounds). The court will therefore rely on the EEOC file only to the extent that it contains proper summary judgment evidence.

### C. Exhaustion of Administrative Remedies

BNSF first argues that Sellers's claims relating to her 2008 termination are not properly before the court because she did not file an EEOC charge contesting that action. "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.), *cert. denied*, 549 U.S. 888 (2006)). It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC. *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012); *McClain*, 519 F.3d at 273; *Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003); *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998); *Barnes v. Levitt*, 118 F.3d 404, 408-09 (5th Cir. 1997), *cert. denied*, 523 U.S. 1136 (1998). While not uniformly viewed as a jurisdictional prerequisite, the filing of an EEOC charge "'is a precondition to filing in district court.'" *Taylor*, 296 F.3d at 379 (quoting *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983))).[8]

The primary purpose of the EEOC charge is to provide notice to the respondent of the discrimination alleged and to activate the voluntary compliance and conciliation functions of the

---

[8] "It is unclear whether exhaustion of administrative remedies [under Title VII] falls under [Rule] 12(b)(1) or 12(b)(6)." *Crosby v. Philip Holdings, LLC*, No. H-12-01749, 2012 WL 5456360, at *2 n.5 (S.D. Tex. Nov. 7, 2012) (citing *Pacheco*, 448 F.3d 783, 788 n.7). Because a decision concerning the exhaustion issue would be the same under either standard, the court will proceed by examining all of Defendant's arguments under the standard established by Rule 12(b)(6).

EEOC. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004); *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. *See Barnes*, 118 F.3d at 409; *EEOC v. Hearst Corp.*, 103 F.3d 462, 464 (5th Cir. 1997). Requiring the plaintiff first to state her allegations of employment discrimination in an EEOC charge serves "Congress' intention to promote conciliation rather than litigation in the Title VII context." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998).

Civil complaints filed under Title VII may only encompass discrimination "'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *McClain*, 519 F.3d at 273 (quoting *Sanchez*, 431 F.2d at 466); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994); *see Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Fine*, 995 F.2d at 578. Accordingly, the scope of the complaint is limited to "'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge.'" *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712 (quoting *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)); *see Pacheco*, 448 F.3d at 789-90; *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit. *See Thomas*, 220 F.3d at 395; *Nat'l*

*Ass'n of Gov't Emps.*, 40 F.3d at 711-12; *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Sanchez*, 431 F.2d at 465-66. Several district courts have applied these principles to disallow a variety of claims not raised in the EEOC charge. *See, e.g., Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 490 (5th Cir. 2010) (affirming district court's ruling that certain claims were unexhausted where plaintiffs failed either to check the appropriate box or describe the discriminatory conduct in the charge); *Butler v. Shinseki*, No. 10-0857, 2011 WL 3419619, at *6 (E.D. La. Aug. 4, 2011) (dismissing racial discrimination claim that was not alleged in the EEOC charge); *Harvill v. Westward Commc'ns, LLC*, 311 F. Supp. 2d 573, 585 (E.D. Tex. 2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge).

To determine whether Sellers exhausted her administrative remedies with respect to her 2008 claims, it is necessary to look at the allegations in her charge:

> I. I [Sellers] have been employed by the railway since March 1997 . . . . During my employment, I have been subjected to a hostile work environment towards females. On August 7, 2007, I was disciplined and placed on hold from work. I previously complained about the treatment of females and because of my disability.
>
> II. On August 7, 2007, Utilis Vinson . . . informed me I was suspended for alleged rule 49, CFR 265 FRA (safety). Males are not disciplined in the same or similar manner for the same or similar infractions.
>
> III. I believe I am being discriminated against because of my sex, female, and retaliated against for opposing what I believed to be a violation of Title VII of the Civil Rights Act of 1964, as amended. Further, I believe I am being retaliated against for filing [a prior charge] alleging disability discrimination.[9]

---

[9] Sellers's 1999 lawsuit is presumably related to this earlier charge, though she characterizes that lawsuit as relating to sexual harassment, not disability. Neither party has presented evidence clarifying this discrepancy.

The charge did not mention, nor could it have mentioned, her subsequent discharge or rule violations. Sellers could have amended the charge to include a further allegation of sex discrimination relating to her 2008 dismissal, but she did not do so. As a result, the material question becomes whether her 2008 claims can "reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d at 466).

In this instance, the alleged discrimination and retaliation in 2008 could reasonably be expected to grow out of Sellers's allegations regarding discrimination and retaliation brought forth in 2007. The claims involve the same supervisor responding to similar rule violations occurring within a short period of time. In addition, the EEOC file contains Sellers's 2008 dismissal letter, and the EEOC sought records covering the months during which Sellers was suspended. As the Fifth Circuit has stated, although "the actual scope of an EEOC investigation does not determine whether a claim is exhausted, we are also mindful that investigation of a particular claim creates a strong inference that such a claim was presented." *Clark*, 18 F.3d at 1280. Of course, the issue is complicated here because the incidents that resulted in her suspension and ultimate dismissal are similar, making it difficult to discern the precise focus of the EEOC's investigation. In resolving this issue, the court finds *Everett v. Central Mississippi, Inc. Head Start Program* instructive. 444 F. App'x 38 (5th Cir. 2011). There, the court considered an employee's termination that occurred several months after she filed an EEOC charge alleging retaliation. *Id.* at 45. The court held that the employee had exhausted her administrative remedies with respect to the termination despite not amending her EEOC charge. *Id.* The decision rests in part on the fact that the EEOC did not issue a right-to-sue letter until after the termination as well as the defendant's concession that the EEOC could have learned of the termination while investigating the charge. *Id.* Here, Sellers was

discharged approximately three months after filing her charge, and her right-to-sue letter was issued years later. Moreover, it appears from the EEOC's file that the Commission was aware of Sellers's 2008 dismissal and sought employment records covering 2008. Given the similarities between the 2007 and 2008 claims and the EEOC's awareness of the 2008 dismissal, the court declines to hold that Sellers failed to exhaust her administrative remedies with respect to her 2008 claims.

     D.     <u>Employment Discrimination</u>

     1.     <u>Burden of Proof</u>

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *accord Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)); *see also Smith v. City of Jackson*, 351 F.3d 183, 194 (5th Cir. 2003).

In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence. *See Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 279 (5th Cir. 2011); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010); *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.

3d 157, 166 (5th Cir. 2007); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003)); *accord Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008); *Jones*, 427 F.3d at 992. "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Reeves*, 530 U.S. at 142-43; *Fahim*, 551 F.3d at 349; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *Turner*, 476 F.3d at 346.

Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142-43; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quotation omitted)); *accord Turner*, 675 F.3d at 892 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous."); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Moss*, 610 F.3d at 922; *Fahim*, 551 F.3d at 349; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.* 557 U.S. 167, 169-70 (2009)); *accord Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Alvarado*, 492 F.3d at 611. "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507) (emphasis in original)); *accord Vaughn*, 665 F.3d at 636; *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510); *Black*, 646 F.3d at 271; *Nasti*, 492 F.3d at 593; *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.), *cert. denied*, 546 U.S. 1061 (2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Nasti*,

492 F.3d at 593; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753-54 (5th Cir. 2005); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1150 (2001). In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff must offer sufficient evidence to create a genuine issue of material fact "'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)); *accord Vaughn*, 665 F.3d at 636; *Fahim*, 551 F.3d at 349; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

Under the pretext alternative approach, the "plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citing *Reeves*, 530 U.S. at 143; *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir.), *cert. denied*, 535 U.S. 1078 (2002); *accord Nasti*, 492 F.3d at 593. "An explanation is false or unworthy or credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 899); *accord Vaughn*, 665 F.3d at 637; *Burrell*, 482 F.3d at 412. "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147 (emphasis in original); *accord Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 861 (5th Cir. 2010); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476

(5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574 (5th Cir. 2004); *West*, 330 F.3d at 385; *Ratliff v. City of Gainesville*, 256 F.3d 355, 360 (5th Cir. 2001). "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 897); *accord Black*, 646 F.3d at 276; *Machinchick*, 398 F.3d at 351 (citing *Reeves*, 530 U.S. at 147-48). "'[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.'" *Russell*, 235 F.3d at 223 (quoting *Reeves*, 530 U.S. at 147); *accord Black*, 646 F.3d at 276; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385. Hence, the plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves*, 530 U.S. at 148; *Ratliff*, 256 F.3d at 361-62; *Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001); *Russell*, 235 F.3d at 223.

Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Price*, 283 F.3d at 720 (quoting *Reeves*, 530 U.S. at 148-49); *accord Machinchick*, 398 F.3d at 351 n.14; *Laxton*, 333 F.3d at 579; *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Because the plaintiff has the ultimate burden of proving intentional discrimination, "[a]n employer is entitled to judgment as a matter of law on this ultimate question 'if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was

discriminatory.'" *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 565 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001) (quoting *Vadie*, 218 F.3d at 372). "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford*, 234 F.3d at 902 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001)). "It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford*, 234 F.3d at 903 (citing *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998)). "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id.*

### 2.   *Prima Facie* Case of Discrimination

To establish a *prima facie* case of disparate treatment, the plaintiff must show that:

(1)     she is a member of a protected class;

(2)     she is qualified for the position;

(3)     she suffered an adverse employment action; and

(4)     others outside the class who were similarly situated were treated more favorably than she.[10]

---

[10] Sellers was not replaced after her termination. Instead, her job duties were absorbed by or assigned to other BSNF employees pursuant to the job assignment policies detailed above. Reassignment or absorption of a terminated employee's job duties does not constitute "replacement" for purposes of establishing a *prima facie* case of discrimination under a discriminatory discharge theory. *See Martin v. Bayland Inc.*, 403 F. Supp. 2d 578, 583 (S.D. Tex. 2005), *aff'd*, 181 F. App'x 422 (5th Cir. 2006) (holding that an employee is not replaced when his or her job duties are "distributed among other employees after termination"); *see also Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp. 2d 813, 820-21 (S.D. Tex. 2012). Sellers argues that because new male employees were added to the seniority rosters after her termination, she was in fact replaced. She does not deny, however, that Sellers's duties were absorbed by other employees, nor does she cite any precedent to support her contention that *Martin* is inapplicable

*See Nasti*, 492 F.3d at 593; *Keelan*, 407 F.3d at 339; *Laxton*, 333 F.3d at 579 n.1; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). She must demonstrate that employees outside her protected class received preferential treatment in circumstances nearly identical to hers. *See Turner*, 675 F.3d at 893-96 (stating that the inquiry into whether an employee is similarly situated requires an examination of whether "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."); *Bryant*, 413 F.3d at 478; *Keelan,* 407 F.3d at 345; *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005) (emphasizing that assessment of similarity of employees must be viewed from employer's perspective); *Wallace*, 271 F.3d at 221. "'The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, *and have essentially comparable violation histories*.'" *Turner*, 675 F.3d at 893 (quoting *Lee*, 574 F.3d at 260 (emphasis added). Also, "the conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions*." Lee*, 574 F.3d at 260. But "[e]ach employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Id.* at 260-61.

---

to this case. Therefore, she cannot establish a *prima facie* case on the theory that she was replaced by someone outside her protected class.

Nevertheless, Sellers may still demonstrate a *prima facie* case using a theory of disparate treatment, which she attempts to do in her response to the instant motion for summary judgment. The court will accordingly analyze her claims using that framework.

Here, only the last element of Sellers's *prima facie* case is in dispute because: (1) Sellers is female and therefore a member of a protected class; (2) neither party disputes that she was qualified for her position; and (3) Sellers's termination and suspension were materially adverse actions that satisfy the second element of a *prima facie* case of retaliation. *See DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007); *Morris v. Jefferson Parish Sheriff's Office*, 45 F. App'x 322, No. 01-30153, 2002 WL 1868104, at *6-8 (5th Cir. June 20, 2002); *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999); *see also Wilson v. City of Baton Rouge*, 327 F. App'x 497, 498 (5th Cir. 2009) (recognizing that a "two-week suspension without pay is an adverse employment action"); *Jackson v. Geren*, 294 F. App'x 171, 172 (5th Cir. 2008) (holding that a twelve-day suspension is an adverse employment action).

To establish the final element of her *prima facie* case, Sellers has presented excerpts from the personnel files of fifteen proposed comparators whom she contends were in circumstances nearly identical to hers yet received more favorable treatment.[11] The personnel files include records of each comparator's violation history and, for some individuals, evidence of other unrecorded rule violations, usually consisting of letters to the employees involved.[12] Despite this evidence, however, there are multiple reasons why Sellers cannot establish the last element of her *prima facie* case with this evidence.

---

[11] The proposed comparators are Anthony Arline, Spencer Bates ("Bates"), Robert Brittner, Ronnie Dodson, Steven Dominy ("Dominy"), Tom Gardner, H.V. Hanks, Terry Hardy, Jr., Jay Kelley ("Kelley"), Shawn Meredith, Danny Moody ("Moody"), Steven Soffes, Britton Spurlock ("Spurlock"), David C. Etzel ("Etzel"), and D.W. Phillips, Jr. ("Phillips").

[12] Sellers also points to her deposition testimony that she has heard of other violations not on the record. That evidence is hearsay, however, and will not be considered. *Okoye*, 245 F.3d at 510 n.5.

First, only two of the proposed comparators, Kelley and Phillips, committed violations that were nearly identical to the ones Sellers committed during the August 2007 incident. Kelley's conduct is described as "exceeded limits of track warrant, placed train in emergency, made reserve movement [without] permission & dishonesty by failing to report incident violation of rules 1.6, 6.4.1, & 14.2," while Phillips's conduct is described as "failure to control train to a planned stop, passing the signal, failure to [report] the emergency application to dispatcher or to warn other trains, occupying main [track] [without] authority." Both are similar to Sellers's conduct in August 2007, when she exceeded her track warrant authority, reversed a train without permission, and failed to report the incident. The other 13 comparators had a variety of infractions, ranging from attendance violations to operational violations such as failing to report the position of a siding switch or excessive speed. None of these remaining 13 employees is a proper comparator, however, because there is no evidence that their conduct was nearly identical to the conduct that gave rise to Sellers's suspension.

Second, nearly all of the comparators have dissimilar violation histories. To establish her *prima facie* case, Sellers does not have to point to comparators whose violation histories contain an identical numbers of infractions as Sellers's did at the time of her suspension. Nevertheless, she must produce evidence showing that the violation histories are "comparable." *Lee*, 574 F.3d at 260. Here, the court will consider violation histories comparable if the comparator had engaged in violations serious enough to result in dismissal or prolonged suspension because, at the time she was suspended in August 2007, Sellers had already been discharged once before and had been reinstated on "managerial leniency." The only proposed comparators who share that violation

history are Bates, Dominy, Etzel, Moody, Kelley, Spurlock, and Phillips. Of these proposed comparators, only Bates was discharged then reinstated on the basis of managerial leniency.

Third, Kelley and Phillips, the only comparators who committed similar rule violations and had prior dismissals or lengthy suspensions on their records, were not treated more favorably than Sellers. Kelley was suspended from service for nearly two years for, in part, violating the same rules that Sellers did. After being reinstated in 2010, he was dismissed in 2011 for "failing to stop short of [a] red flag." Thus, his only post-reinstatement violation resulted in his dismissal, whereas Sellers's resulted in a four-month suspension. As for Phillips, he was suspended in 2005 for failing to obey a signal. After being reinstated, he was dismissed in 2006 for violations similar to those Sellers committed during the August 2007 incident. Sellers, on the other hand, was only suspended. Although Phillips was eventually reinstated, so too was Sellers. Moreover, Phillips's reinstatement was the result of a Public Law Board decision, not a decision by BNSF. This evidence shows that the two comparators who were in nearly identical circumstances were not treated more favorably than Sellers.

Although the reasons above are sufficient to establish that Sellers cannot meet the fourth element of a *prima facie* case, there is an additional problem affecting many of the fifteen comparators. Sellers has not clarified which comparators shared the same supervisor or had their employment status determined by the same person who determined hers. The evidence reveals that Vinson became a superintendent of BNSF's Gulf East Region in the latter part of 2007 and that he made the disciplinary decisions about which Sellers complains in the instant case. Many of the comparators have disciplinary histories that include earlier dates, and some were working at different locations. Without evidence as to who was responsible for employee discipline at

those times and at those locations, certain comparators cannot be shown to have been in circumstances nearly identical to Sellers. For these reasons, Sellers cannot establish a *prima facie* case that her 2007 suspension was the result of sex discrimination. *Lee*, 574 F.3d at 260-61.

The same proposed comparators that are insufficient for the 2007 discrimination claim are likewise insufficient for her 2008 discriminatory discharge claim. At the time of Seller's termination, she had been dismissed, reinstated through managerial leniency, suspended, reinstated after her suspension, then dismissed again. Because none of the proposed comparators identified by Sellers share comparable violation histories, she cannot establish a *prima facie* case of discrimination based on her 2008 discharge. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012); *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005); *Aguinaga v. Tex. Alcohol & Beverage Comm'n*, 98 F. App'x 328, 331 (5th Cir. 2004).

### 3. Legitimate, Non-Discriminatory Reason

Even if Sellers had established a *prima facie* case of sex discrimination, BNSF has set forth an adequate, nondiscriminatory reason for her suspension and termination. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Raytheon Co.*, 540 U.S. at 49 n.3; *Reeves*, 530 U.S. at 142; *Hicks*, 509 U.S. at 506-07; *Fahim*, 551 F.3d at 349; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593; *Turner*, 476 F.3d at 345. "The purpose of this step is 'to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent.'" *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997) (quotation omitted); *accord Carlton v. Mystic Transp., Inc.*, 202 F.3d

129, 134 (2d Cir.), *cert. denied*, 530 U.S. 1261 (2000). "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis omitted); *accord Nasti*, 492 F.3d at 593 (citing *Burdine*, 450 U.S. at 254); *Patrick*, 394 F.3d at 315; *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). Hence, the defendant's burden is relatively light. *See Greenway*, 143 F.3d at 52.

"If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *Hicks*, 509 U.S. at 509); *accord Piper v. Veneman*, 183 F. App'x 407, 409 (5th Cir. 2006); *Price*, 283 F.3d at 720. "The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979); *accord Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999). Indeed, even an employer's "'incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (quoting *Little v. Republic Ref. Co, Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see also Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 870 (5th Cir. 2010). The articulated reason, however, must be both "'clear and reasonably specific.'" *Okoye*, 245 F.3d at 513 (quoting *Burdine*, 450 U.S. at 258); *see Alvarado*, 492 F.3d at 616. Furthermore, it "'must be legally sufficient to justify a judgment for the [employer].'" *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161

(1st Cir. 1998) (quoting *Burdine*, 450 U.S. at 255); *accord Patrick*, 394 F.3d at 319 n.34. If the defendant sustains its burden of production, "the presumption raised by the plaintiff's prima facie case essentially disappears, and the plaintiff is left with the ultimate burden which has never left him: that of proving that the defendant intentionally discriminated against him." *Tanik v. S. Methodist Univ.*, 116 F.3d 775, 776 (5th Cir.), *cert. denied*, 522 U.S. 1015 (1997); *accord Reeves*, 530 U.S. at 143; *Nasti*, 492 F.3d at 593; *Wheeler*, 415 F.3d at 405; *Laxton*, 333 F.3d at 578; *Sandstad*, 309 F.3d at 897.

Here, BNSF has articulated legitimate, non-discriminatory reasons for its 2007 suspension and 2008 dismissal of Sellers. According to BNSF, she was suspended due to the severity of the August 2007 incident and its close proximity to her reinstatement. As for her dismissal, BNSF claims that its decision was based on the seriousness of the January 2008 incident, its similarity to the August 2007 incident, and the fact that the two incidents occurred in close proximity to one another. BNSF has therefore satisfactorily presented legitimate, non-discriminatory reasons for its actions.

4.    Pretext

Furthermore, if Sellers had established a *prima facie* case, because BNSF has carried its burden of articulating a legitimate nondiscriminatory reason for its employment decision, Sellers would have to "provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination" to prevail. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 184 (5th Cir. 1999) (quotation omitted); *see Reeves*, 530 U.S. at 143; *Hicks*, 509 U.S. at 507-08; *McDonnell Douglas Corp.*, 411 U.S. at 804; *Vaughn*, 665 F.3d at 637; *Machinchick*, 398 F.3d at 351; *Laxton*, 333

F.3d at 578; *West*, 330 F.3d at 385; *Sandstad*, 309 F.3d at 897. Pretext may be established "'either through evidence of disparate treatment or by showing that the employer's explanation is false or 'unworthy of credence.'" *Nasti*, 492 F.3d at 593 (quoting *Laxton*, 333 F.3d at 578); *see also Vaughn*, 665 F.3d at 637. Nevertheless, "the plaintiff always bears the burden of 'persuading the trier of fact that the defendant intentionally discriminated' against [her]." *Kanida*, 363 F.3d at 575 n.5 (quoting *Reeves*, 530 U.S. at 143); *see also Vaughn*, 665 F.3d at 637; *Nasti*, 492 F.3d at 593; *Baker*, 430 F.3d at 753-54; *Bryant*, 413 F.3d at 476 n.3. "To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination." *Nasti*, 492 F.3d at 593; *accord Laxton*, 333 F.3d at 578.

While the presumption of discrimination is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom'" may still be considered "'on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10); *see Ameristar Airways, Inc. v. Admin. Review Bd.*, 650 F.3d 562, 567 (5th Cir. 2011); *Laxton*, 333 F.3d at 582. If, however, "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford*, 234 F.3d at 903 (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see Reeves*, 530 U.S. at 143; *Laxton*, 333 F.3d at 585. Nevertheless, "discrimination suits still require evidence of discrimination." *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001); *accord Ratliff*, 256 F.3d at 360-61; *Ganheart v. Xavier Univ. of La.*, No. 07-9703, 2009 WL

24227, at *11 (E.D. La. Jan. 2, 2009). "[T]he question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiff. . . . ." *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001), *cert. denied*, 540 U.S. 1005 (2003) (citing *Hicks*, 509 U.S. at 511).

"On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720; *accord Franklin v. Boeing Co.*, 232 F. App'x 408, 410 (5th Cir. 2007); *Rubinstein*, 218 F.3d at 400; *Holmes v. Drug Enforcement Admin.*, 512 F. Supp. 2d 826, 844 (W.D. Tex. 2007). Hence, the plaintiff's assertion of pretext must be supported by more than mere self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008); *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001); *Bauer*, 169 F.3d at 967. If the evidence presented is "not so persuasive so as to support an inference that the real reason was discrimination," then the plaintiff has failed to meet her burden. *Rubinstein*, 218 F.3d at 400; *accord Price*, 283 F.3d at 724. "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148; *accord West*, 330 F.3d at 385; *Price*, 283 F.3d at 720; *Okoye*, 245 F.3d at 514; *Smith v. Hewlett-Packard Co.*, 512 F. Supp. 2d 587, 601 (N.D. Tex. 2007). For example, summary judgment would be appropriate "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148; *accord Burrell*, 482 F.3d at 415; *Machinchick*, 398 F.3d at 351 n.14; *Smith*, 512 F. Supp. at 601-02.

In the case at bar, Sellers has made no specific showing that the articulated reasons for her suspension or discharge are false or that the real motivation behind either action was sex discrimination. Rather, she argues that the evidence she presented to support her *prima facie* case is also sufficient to establish pretext. That evidence fails to show, however, that any male employees were treated more favorably under nearly identical circumstances, much less that Vinson discriminated in suspending and dismissing her. She emphasizes Vinson's allegedly erroneous belief that she was on probation after her reinstatement as evidence that her punishment was pretextual. Even if his belief were erroneous, under the circumstances presented here, that misapprehension would not render Sellers's suspension discriminatory. *See Moore v. Eli Lilly & Co.*, 990 F.2d 812, 816 (5th Cir.), *cert. denied*, 510 U.S. 976 (1993) (holding that an employee's discharge was not discriminatory where it was based on an employer's reasonable, but nonetheless incorrect, belief that employee had falsified records). Therefore, even assuming that Sellers had met her burden of establishing a *prima facie* case, she could not prevail on her discrimination claims because she cannot show that BNSF's reasons for suspending and dismissing her were pretextual.

E.    Retaliation

Sellers next asserts that her 2007 suspension and 2008 termination were in retaliation for the lawsuit she filed against BNSF in 1999. She also alleges that her 2008 dismissal was carried out in retaliation for her filing an EEOC charge in 2007. In response, BNSF argues that Sellers

31

cannot establish a *prima facie* case of retaliation because the decision maker did not know about

either the lawsuit or the discrimination charge until after her final discharge.

Title VII prohibits retaliation against an employee who has engaged in activity protected

by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against
> any of his employees . . . because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he has made a charge, testified,
> assisted, or participated in any manner in an investigation, proceeding, or hearing
> under this subchapter.

42 U.S.C. § 2000e-3.

"[T]he familiar *McDonnell Douglas* burden-shifting framework applies in Title VII

retaliation cases." *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001), *cert. denied*, 536 U.S.

922 (2002) (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *Rubinstein*, 218 F.3d at

401-02); *accord Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007);

*Turner*, 476 F.3d at 348; *Septimus v. Univ. of Houston*, 399 F.3d 601, 607-08 (5th Cir. 2005).

"The framework for analyzing a retaliation claim is the same as that used in the employment

discrimination context." *Rios*, 252 F.3d at 380; *accord Perez v. Region 20 Educ. Serv. Ctr.*, 307

F.3d 318, 325 (5th Cir. 2002); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Medina v.

Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). Therefore, after the plaintiff establishes

a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate,

nonretaliatory reason for its actions. *Hernandez*, 670 F.3d at 657; *Strong*, 482 F.3d at 805;

*Baker*, 430 F.3d at 754-55; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). If the employer

meets its burden, the employee may rebut a defendant's legitimate, nondiscriminatory reason for

an adverse employment action by demonstrating that "'(1) the defendant's reason is not true, but

is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative).'" *Hollins v. Premier Ford Lincoln Mercury, Inc.*, 766 F. Supp. 2d 736, 756 (N.D. Miss. 2011) (quoting *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 519 (5th Cir. 2010)). Under a pretext theory, to carry her ultimate burden, Sellers must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *See Hernandez*, 670 F.3d at 657-58; *Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608. Both parties' briefs treat this as a pretext case. Consequently, the mixed-motive alternative is not analyzed here. *See Plumlee v. City of Kennedale*, No. 4:10-CV-685, 2011 WL 2550807, at *5 (N.D. Tex. June 27, 2011) (declining to apply mixed-motives framework where plaintiff argued only pretext).

1. *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation, Sellers must show:

(1)     she engaged in statutorily protected activity under Title VII;
(2)     action was taken by the employer against the plaintiff that a reasonable employee would consider materially adverse; and
(3)     a causal connection exists between the protected activity and the adverse action.

*See Hernandez*, 670 F.3d at 657; *Taylor v. United Parcel Serv.*, 554 F.3d 510, 523 (5th Cir. 2008); *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57, 559 (5th Cir. 2007); *Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007); *Turner*, 476 F.3d at 348.

"An employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)); *accord Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001); *Baker*, 430 F.3d at 755; *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Here, Sellers indisputably engaged in protected activity when she filed a charge of employment discrimination with the EEOC. "'[F]iling an administrative complaint is clearly protected activity.'" *Walker*, 214 F.3d at 629 (quoting *Dollis*, 77 F.3d at 781), *overruled on other grounds by White*, 548 U.S. at 53; *accord Jones*, 427 F.3d at 995 (recognizing that filing an EEOC charge is protected activity). Likewise, her 1999 sexual harassment suit was protected activity for purposes of Title VII. *Casarez*, 193 F.3d at 339 (stating that filing suit under Title VII is a protected activity).

As discussed above, Sellers's termination and suspension were also unquestionably materially adverse actions that satisfy the second element of a *prima facie* case of retaliation. *See Alvarado*, 492 F.3d at 612 (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2001); *see also Wilson*, 327 F. App'x at 498 (recognizing that a "two-week suspension without pay is an adverse employment action")*; Jackson*, 294 F. App'x at 172 (holding that a twelve-day suspension is an adverse employment action).

Although the third element of a *prima facie* case—causation—is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the *prima facie* case stage is much less stringent. *See Ackel v. Nat'l Comm'cns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2005); *Gee*, 289 F.3d at 345; *Evans*, 246 F.3d at 354; *Medina*, 238 F.3d at 685; *Long v. Eastfield Coll.*, 88 F.3d 300, 304 n.4 (5th Cir. 1996). As the Fifth Circuit has commented:

At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly.

*Long*, 88 F.3d at 304 n.4 (emphasis in original). In order to establish the requisite causal link, a plaintiff need not prove that her protected activity was the sole factor in motivating the employer's challenged decision. *See Everett*, 444 F. App'x at 46; *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir.), *cert. denied*, 549 U.S. 884 (2006) (citation omitted); *Gee*, 289 F.3d at 345; *Evans*, 246 F.3d at 354; *Medina*, 238 F.3d at 684; *Rubinstein*, 218 F.3d at 403; *Long*, 88 F.3d at 305 n.4. "[T]he 'causal link' element of the *prima facie* case is satisfied when the plaintiff shows that the employment decision and his protected activity 'were not wholly unrelated.'" *Medina*, 238 F.3d at 684 (quoting *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981 (1985)).

Furthermore, to satisfy the causation prong, "a plaintiff must show that the decisionmaker who committed the adverse employment action was aware of the plaintiff's protected activity." *Perches v. Elcom, Inc.*, 500 F. Supp. 2d 684, 692 (W.D. Tex. 2007) (citing *Manning*, 332 F.3d at 883); *see Gollas v. Univ. of Tex. Health Sci. Ctr.*, 425 F. App'x 318, 325 (5th Cir. 2011); *Ackel*, 339 F.3d at 385-86; *Medina*, 238 F.3d at 684; *Smith v. Potter*, 629 F. Supp. 2d 644, 656 (S.D. Miss. 2009). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d

164, 168 (5th Cir. 1999); *accord Gollas*, 425 F. App'x at 325; *Ackel*, 339 F.3d at 385-86; *Manning*, 332 F.3d at 883.

The consideration of three factors may be helpful in determining whether a causal link has been demonstrated at the *prima facie* case stage: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507-08 (5th Cir. 1994) (citing *Jenkins v. Orkin Exterminating Co.*, 646 F. Supp. 1274, 1277 (E.D. Tex. 1986)). "The timing of the adverse employment action can be a significant, although not necessarily determinative, factor." *Mayberry*, 55 F.3d at 1092; *accord Lemaire*, 480 F.3d at 390; *Evans*, 246 F.3d at 354. "'Close timing between an employee's protected activity and an adverse action against [him] may provide the "causal connection" required to make out a prima facie case of retaliation.'" *Evans*, 246 F.3d at 354 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997)); *accord McCoy*, 492 F.3d at 561 n.28; *Jones*, 427 F.3d at 995.

The causation element may be proved when the protected activity and the adverse employment action occur "'very close'" in time. *Clark Cnty. Sch. Dist.*, 532 U.S. at 273-74; *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 879 (5th Cir. 2010). The Fifth Circuit allows for an "inference of causation . . . where the adverse employment action occurs in close temporal proximity to the protected conduct." *Richard*, 233 F. App'x at 338 (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). The *Evans* court "relied on decisions from district courts [within the Fifth Circuit] that found 'a time lapse of up to four months . . . sufficient to satisfy the causal connection for summary judgment purposes.'" *Richard*, 233 F.

App'x at 338 (citing *Evans*, 246 F.3d at 354) (holding that a two-and-a-half month gap gave rise to an inference of causation); *but see Everett*, 444 F. App'x at 47 & n.31 (noting, in an unpublished opinion, that three- and four-month periods have been found to be insufficient to establish a *prima facie* case in certain circumstances); *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011) (four-month gap, standing alone, was insufficient). An inference of causation usually cannot arise from gaps longer than four months.

With respect to the retaliation claims based on the 1999 sexual harassment suit, Sellers does not dispute Vinson's deposition testimony that he had no knowledge of the suit until after Sellers's discharge in 2008. Her failure to adduce evidence that the relevant decision-maker knew of her protected activity is sufficient to negate the existence of a causal link between her protected activity and her suspension and discharge. *See Ackel*, 339 F.3d at 385-86 (citing *Medina,* 238 F.3d at 684). Moreover, the eight-year gap between the suit and her suspension and discharge is surely too long to permit any inference of retaliation. Nevertheless, Sellers responds by pointing out language in the EEOC's determination that "[her] discharge was more likely than not a retaliatory event." That statement, however, is insufficient to sustain a *prima facie* case of retaliation based on her earlier sexual harassment suit. The EEOC's determination does not specify whether the harassment suit or the charge itself led to the alleged retaliatory event. Moreover, Sellers does not point to any evidence in the EEOC file supporting the EEOC's conclusion, much less specifically tying its finding to the 1999 lawsuit. Thus, she has presented no evidence of a causal link between her 1999 sexual harassment suit and either her 2007 suspension or 2008 dismissal. As a result, she cannot establish a *prima facie* case of retaliation based on her prior sexual harassment suit.

As for the claim that the 2008 discharge was retaliatory, Vinson testified that he was unaware of the 2007 EEOC charge until after Sellers's ultimate dismissal. Sellers responds that there is circumstantial evidence that Vinson knew about the charge, noting that the EEOC informed BNSF of Sellers's complaint on November 29, 2007, and requested a response from BNSF by December 31, 2007. Thus despite Vinson's testimony, a reasonable jury might infer from these facts that he had some knowledge of Sellers's EEOC charge. Moreover, only slightly more than three months[13] passed between the filing of the charge and Sellers's discharge. The close temporal proximity between those events permits an inference of causation. *See Richard*, 233 F. App'x at 338. Accordingly, Sellers has established a *prima facie* case of retaliation based on the theory that her 2008 discharge was in relation for her filing of her EEOC charge.

### 2. Legitimate, Non-Discriminatory Reason

Because Sellers proffers sufficient evidence to establish a *prima facie* case of retaliation concerning her 2008 discharge, the burden shifts to BNSF to articulate a legitimate, non-discriminatory reason for Sellers's 2008 dismissal. BNSF has adduced ample evidence of a non-retaliatory reason for Sellers's dismissal. Specifically, in the span of only a few months, she was involved in two similar incidents involving exceeding her track warrant authority and, in the view of BNSF, a level of dishonesty. Given the nature of those violations and their close proximity not only to each other but also to her reinstatement, BNSF has satisfied its burden of showing a legitimate, non-discriminatory reason for discharging Sellers. *See Hockman*, 407 F.3d at 330; *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2001), *abrogated on other grounds by White*, 548 U.S. at 57; *Medina*, 238 F.3d at 684 (citing *Long*, 88 F.3d at 305).

---

[13] The exact time lapse is 94 days.

3.     Pretext

The final inquiry, therefore, is whether the proffered reasons for the alleged acts of retaliation are merely pretextual. *See Strong*, 482 F.3d at 806; *Rios*, 252 F.3d at 380; *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). "If the plaintiff presents evidence supporting the prima facie case, plus evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer the existence of retaliation." *Mota v. Univ. of Tex. Health Sci. Ctr.*, 261 F.3d 512, 519-20 (5th Cir. 2001) (citing *Reeves*, 530 U.S. at 148); *accord Kanida*, 363 F.3d at 573; *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (citing *Swanson*, 110 F.3d at 1185). Evidence that raises only a weak inference of pretext, however, is insufficient to create a genuine issue of material fact in the retaliation context. *See Rios*, 252 F.3d at 381. The ultimate burden of persuading the trier of fact that the defendant unlawfully retaliated against the plaintiff for engaging in protected activity remains at all times with the plaintiff. *See Gee*, 289 F.3d at 348; *Sherrod*, 132 F.3d at 1122; *see also Strong*, 482 F.3d at 806; *Rios*, 252 F.3d at 380.

"The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4 (citing *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985)); *see Hernandez*, 670 F.3d at 657; *Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608; *Rios*, 252 F.3d at 380; *Evans*, 246 F.3d at 354. Hence, the employee must show that the employer's explanation is unworthy of credence and that "but for" her protected activities she would not have suffered the adverse employment action. *See Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608; *Kanida*, 363 F.3d at 580-81; *Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 685. "While this

portion of the analysis may seem identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Medina*, 238 F.3d at 685 (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116-17 (5th Cir. 1983)).

As with her discrimination claim, Sellers has made no showing that the articulated reasons for her discharge are false or that BNSF's reasons were unworthy of credence. Instead, she simply argues that her 2008 dismissal had to be the result of retaliation because other similarly situated males were treated more favorably and because the EEOC determination letter states her discharge was probably retaliatory. Those conclusory contentions are insufficient to defeat summary judgment. As discussed above, Sellers has not presented evidence that any of her proposed comparators were treated more favorably under nearly identical circumstances, nor has she pointed to evidence that supports the EEOC's finding of retaliation. In fact, in denying her claim for reinstatement after her 2008 termination, the Public Law Board decided that Sellers "put herself and others in danger by failing to stay within track limits but also by not reporting the violation in an accurate and timely manner." Thus, in view of the numerous documented deficiencies in her job performance at the time of her 2008 termination, Sellers cannot meet her burden of showing that retaliation played a role in that employment decision and that she would not have been discharged but for her filing an EEOC charge. Therefore, summary judgment is appropriate on her retaliation claims.

III.   Conclusion

Accordingly, BNSF's Motion for Summary Judgment is granted. Sellers fails to present a claim that warrants relief. There remain no material facts in dispute, and BNSF is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 18th day of March, 2013.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE